STATE ex rel. BRETT, County Atty., v. FOUR (4) BELL FRUIT GUM SLOT MACHINES et al.

No. 31872. Oct. 9, 1945.

*162 P. 2d 539.*

Rutherford Brett, County Atty., and Gerald S. Tebbe, Asst. County Atty., both of Ardmore, for plaintiff in error.

Stephen A. George, of Ardmore, for defendants in error.

BAYLESS, J. State of Oklahoma ex rel. Rutherford Brett, county attorney of Carter county, Okla., appeals to this court from an order of the district court of Carter county refusing to forfeit Four (4) Bell Fruit Gum slot machines seized by the sheriff of that county from certain persons in charge of the Commissioned Officers Club and Mess Club rooms in Ardmore, Okla.

The proceedings for the forfeiture of these slot machines was brought under 21 O.S. 1941 § 964 et seq. It was admitted at the trial that the devices seized were slot machines within the definition of section 964, supra. It likewise was admitted that these machines were in the club rooms where they were played by the members of the club.

After the seizure of these slot machines and filing of the application to forfeit them, as provided by section 973, the persons in charge of them for the Officers Club filed a motion to quash the illegal seizure. At the time the application for forfeiture came on for hearing the motion to quash was first heard, evidence was offered in support thereof, and this evidence, together with certain stipulations, was considered by the court in rendering judgment finally on the merits. Since this judgment was against forfeiture and was based upon the grounds urged to quash the seizure as well as to resist the application to forfeit, we regard the appeal as being from the order on the merits.

The court made certain findings which we quote:

"The Court thereupon finds that the Four (4) Bell Fruit Gum Slot Machines seized and involved herein were slot machines as defined by said Section 964, Title 21, Oklahoma Statutes, 1941, and are nuisances per se and as such are ordinarily and under proper conditions and circumstances seizable by peace officers; but in the case at bar the Court finds that the seizure of said equipment and the money contained therein was illegal, the same having been taken and seized in violation of the fourth amendment to the United States Constitution and of Section 30, Article 2 of the Oklahoma Constitution, in that no search warrant or other lawful authority was ever issued by any Court or magistrate of competent jurisdiction authorizing the search for or the seizure of said slot machines and money or either of them.

"The Court further finds that the only evidence on that certain point contended for by respondents, to wit: that the Commissioned Officers Club and Mess of the Ardmore Army Airbase of Ardmore, Oklahoma, is a federal instrumentality, and that such Commissioned Officers Club and Mess, as a part of the War Department of the United States and under authorization therefrom, claims and has a property interest in and to said machines and the contents thereof, to wit: the money

seized in connection therewith, indicates that such contention is correct and for that reason the Court finds that said machines and contents thereof should be returned to the respondent, Major John S. Lorr, as the person lawfully in charge of the Commissioned Officers Club and Mess of Ardmore, Oklahoma; to all of which findings, except the findings as to nuisances per se, the plaintiff and relator except and exceptions are allowed by the Court."

—and made an order in conformity therewith.

State urges five propositions, to wit: (1) that under the statutes governing the proceedings the only question for determination was whether the property seized was slot machines and subject to forfeiture and the court erred in not so finding and adjudging; (2) that the seizure of the slot machines was proper and authorized by law; (3) that the slot machines were contraband and seizure thereof violated no constitutional rights of the defendants; (4) that contraband property such as this is unlawful to possess in Oklahoma and the court cannot lawfully return the same to the persons from whom it was seized; and (5) the several members of a voluntary association have no individual property right in the property of the association. The club answers these propositions and advances three counter-propositions: (1) That the property was seized in violation of the Federal and State Constitutions in that no search warrant or other lawful authority for seizure was possessed by the seizing officer; (2) that the premises where said property was located at time of seizure constituted and was an extension to and a part of a military post or reservation and hence were under exclusive jurisdiction of the United States; and (3) that the slot machines seized and the contents thereof were the property of the military personnel and the Government of the United States and were not subject to seizure and confiscation under these statutes.

It was admitted that the sheriff was not armed with a search warrant at the time he entered this club and seized these slot machines. The county attorney made no showing concerning the basis for his action other than the written return of the sheriff attached to the application to forfeit, and in this return the sheriff recited that he was informed of the location of these slot machines, and acting on this information, seized them. The county attorney argues that the sheriff acted upon his own eyewitness information and that his act in seizing them was in the nature of an arrest for a crime committed in his presence which required no search warrant. The club resists this and cites the general authorities with respect to the necessity for a search warrant to enter premises to look for or seize property. The authorities cited by the state, People v. One Pin Ball Machine, 316 Ill. App. 161, 44 N.E. 2d 953, State v. Mullen, 63 Mont. 50, 207 P. 634, and other cases discussing the lack of constitutional immunity for gambling devices, seem to support their position, but we doubt that it is necessary to give extensive consideration to the legality of the officer's act in seizing these slot machines, since we are convinced by the state's brief that there is no property right therein nor constitutional immunity in favor of the ownership thereof. The disposition that we make of the subsequent issues renders it unnecessary to determine whether these slot machines actually were legally seized since the disposal thereof by destruction is required under our statute in any event.

We agree with the first, third, and fourth propositions urged by the state, and based thereon must enter a judgment reversing the judgment of the trial court ordering the return of these slot machines to the representatives of the Officers Club.

Section 973, supra, provides for a court hearing without a jury, which was approved as constitutional in Moore v. Brett, 193 Okla. 627, 137 P.

2d 539, and expressly requires the trial court to find whether the devices being proceeded against are slot machines and expressly requiring, if the court finds that they are slot machines, that they be destroyed and the contents or things of value connected therewith otherwise disposed of. It was admitted by the Officers Club that these machines were slot machines, and this being true, the statute left the trial judge no alternative than to order their destruction. As pointed out in state's brief on the strength of In re Siracusa, 212 N.Y.S. 400; People v. Bowen, 198 N.Y.S. 306; Dorrell v. Clark, 90 Mont. 585, 4 P. 2d 712, 79 A. L. R. 1000; State v. Gambling Equipment, 45 Ariz. 112, 40 P. 2d 746, and other authorities, there can be no property right in Oklahoma in these devices under our statutes, nor can there be any legal right of possession thereof in Oklahoma. Thus, for the district court to direct the return of these slot machines to the former possessors would be to attempt to put the stamp of approval of the court upon the possession of said devices by the persons from whom they formerly were seized and later were to be returned.

The record contains the testimony of officers connected with the Army Air Base and certain written exhibits dealing with the establishment of this club by the officers and the government thereof in certain respects by the War Department. However, this furnishes no basis for violation of the laws of the State of Oklahoma in Oklahoma, in cities or towns away from army posts. It is admitted in this record that these club rooms are not located on government owned property, but are located in the downtown business area of Ardmore, and formerly were used by the Elks Lodge. Without undertaking at this time to determine whether the State of Oklahoma possesses civil or criminal jurisdiction that would justify its officers in invading a military post or reservation to seize devices of this kind, we are convinced that the military post or reservation cannot extend its jurisdiction or cloak of protection to clubs or establishments maintained by the military personnel away from the post or reservation.

The judgment of the trial court is reversed and the cause is remanded to the lower court, with directions to enter an order for the destruction of these slot machines and the disposal of their contents in accordance with the statutes supra.

GIBSON, C.J., HURST, V.C.J., and RILEY and OSBORN, JJ., concur. WELCH, CORN, and DAVISON, JJ., dissent.

WELCH, J. (dissenting). I think the trial court judgment should be affirmed on the findings and conclusions there made, supported as they are by evidence and testimony presented by high ranking officers of the army.